JS 44 CAND (Rev. 12/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SmartData, S.A. | Apple, Inc. |

**(b)** County of Residence of First Listed Plaintiff  Switzerland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  USA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Larisa Migachyov (SBN 264669)
P.O. Box 2061, San Francisco, CA 94126-2061; (650)218-5480

Attorneys *(If Known)*

CV 12-00583 JSC

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☒ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C. 271
Brief description of cause:
Patent Infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)

*(Place an "X" in One Box Only)*   ☐ SAN FRANCISCO/OAKLAND   ☒ SAN JOSE   ☐ EUREKA

DATE  2/6/2012

SIGNATURE OF ATTORNEY OF RECORD

1  Larisa Migachyov (264669)
   LAW OFFICES OF LARISA MIGACHYOV
2  Post Office Box 2061
   San Francisco, California 94126-2061
3  Tel.: 650.218.5480
   Email: larisa@lvmpatents.com
4
   *Attorney for Plaintiff*
5  SMARTDATA, S.A.

6

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11  SMARTDATA, S.A.,                    Case No.

12              Plaintiff,

13      v.                              **COMPLAINT FOR PATENT
                                         INFRINGEMENT**
14  APPLE, INC.,
                                        **DEMAND FOR JURY TRIAL**
15              Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Plaintiff SMARTDATA, S.A. ("SmartData"), by and through its undersigned counsel, hereby

2   alleges as follows:

3                                  **PARTIES**

4            1.      SmartData is a corporation organized under the laws of Switzerland with its

5   principal place of business at CP 931, Rue de la Fusion 99, 1920 Martigny, Switzerland.

6   SmartData does not do business in the Northern District of California.

7            2.      Upon information and belief, Apple, Inc. ("Apple") is a corporation

8   organized under the laws of the State of California with its principal place of business at 1 Infinite

9   Loop, Cupertino, CA 95014, USA. Apple does business in the Northern District of California.

10                          **JURISDICTION AND VENUE**

11           3.      This action for patent infringement arises under the patent laws of the

12  United States, Title 35 of the United States Code. This Court has jurisdiction over the subject

13  matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

14           4.      Venue is proper in the Northern District of California under 28 U.S.C. §§

15  1391(b) and (c) and 1400(b).

16           5.      This Court has personal jurisdiction over Apple ("Defendant") because it

17  resides within the State of California and within this judicial district, and because it has conducted

18  and does conduct business within the State of California and within this judicial district.

19                          **INTRADISTRICT ASSIGNMENT**

20           6.      This is an Intellectual Property Action to be assigned on a district-wide

21  basis pursuant to Civil Local Rule 3-2(c).

22                                 **BACKGROUND**

23           7.      SmartData is a technology company specializing in wireless computing.

24  SmartData develops wireless bridging solutions for portable devices and provides working

25  reference designs, prototypes, and related services to major and leading companies wishing to

26  extend their product portfolio with no or very short development efforts.

27

28

COMPLAINT FOR PATENT INFRINGEMENT            1

1         8.     SmartData sought and obtained patent protection pertaining to its

2 innovations in wireless computing technology. The inventions protected by SmartData's patents

3 resulted from the investment of large monetary sums in research and development.

4         9.     On January 2, 2007, the United States Patent and Trademark Office duly

5 and legally issued U.S. Patent No. 7,158,757, entitled "Modular Computer" ("the '757 Patent"). A

6 true and correct copy of the '757 Patent is attached hereto as Exhibit A.

7       10.     SmartData is the owner by assignment of the '757 Patent and has the

8 exclusive right to license the '757 Patent as well as to sue for and collect fees, costs, and damages,

9 including damages for past infringement of the '757 Patent.

10       11.     The '757 Patent generally relates to wireless computing technology.

11       12.     Upon information and belief, Defendant is a global supplier of computing

12 technology, including wireless computing technology. Defendant designs, manufactures, and

13 markets and extensive portfolio of wireless computing devices and systems. Specifically,

14 Defendant designs, manufactures, and markets the following products: the AppleTV, the iPhone,

15 and Remote (the "Accused Products").

16       13.     Upon information and belief, Defendant has manufactured, used, caused to

17 be used, offered to sell and/or sold its products, including but not limited to the Accused Products,

18 in the Northern District of California and elsewhere in the United States.

19       14.     Upon information and belief, Defendant has known of SmartData's

20 intellectual property at least since July 30, 2004, when SmartData first contacted Defendant

21 regarding the predecessor application to the '757 Patent, U.S. Pat. App. No. US2004/0142724.

22       15.     Defendant corresponded with SmartData regarding a potential licensing

23 offer for the predecessor application to the '757 Patent until mid-2006. On June 29, 2006,

24 Defendant sent a letter to SmartData inviting "constructive dialog" regarding potential licensing of

25 SmartData's intellectual property.

26       16.     Despite further attempts on the part of SmartData to engage in licensing

27 negotiations, Defendant abruptly ceased communication with SmartData following the letter dated

28 June 29, 2006, and failed to reply to SmartData's good-faith licensing offers for the predecessor

1   application to the '757 Patent, expressed in correspondence dated September 6, 2006 and

2   November 14, 2006, which remained unanswered.

3         17.   The '757 Patent issued on January 2, 2007; SmartData referenced the '757

4   Patent in its correspondence to Apple of May 21, 2007, making yet another licensing offer, which

5   also remained unanswered.

6         18.   Upon information and belief, Defendant released one of the Accused

7   Products, the AppleTV, in March of 2007.  Another one of the Accused Products, the iPhone, was

8   released in June of 2007.  The Remote iPhone application, which enables an iPhone user to

9   interact with the AppleTV, was released in July of 2008.  The use of the iPhone with the Remote

10  application installed, with the AppleTV and a display, infringes the '757 Patent.  Both Apple and

11  its customers have used these products together and have practiced the '757 Patent.

12        19.   At the time the Accused Products were released, Defendant was clearly

13  aware of the '757 Patent.  Defendant was also clearly aware of the '757 Patent during the time the

14  Accused Products were being developed.

15  **COUNT I**

16  **(Infringement of the '757 Patent)**

17        20.   SmartData hereby restates and realleges the allegations set forth in

18  paragraphs 1-14 above and incorporates them by reference, as though fully set forth herein.

19        21.   SmartData is informed and believes, and on that basis alleges, that

20  Defendant has infringed and is infringing the '757 Patent, has contributed and is contributing to

21  infringement of the '757 Patent, and/or has actively induced and is actively inducing others to

22  infringe the '757 Patent, by committing acts defined in 35 U.S.C. § 271 as unlawful and

23  infringing, including but not limited to making, using, offering for sale, selling and/or importing

24  products that infringe one or more claims of the '757 Patent.  Defendant's infringing products

25  include, but are not limited to, the Accused Products.  All such acts by Defendant have been

26  without authority or license from SmartData.

27        22.   As a consequence of Defendant's infringing activities, SmartData has been

28  damaged in an amount not yet determined.  Defendant's infringement of SmartData's exclusive

1  rights under the '757 Patent will continue to damage SmartData, causing irreparable harm, for

2  which there is no adequate remedy at law, unless Defendant is enjoined by this Court.

3      23.    Upon information and belief, Defendant's infringement is willful and

4  deliberate, entitling SmartData to increased damages under 35 U.S.C. § 284 and to attorneys' fees

5  and costs incurred in prosecuting this action under 35 U.S.C. § 285.

6

7      WHEREFORE, SmartData prays for the following relief:

8      A.    That the Court find and enter a judgment that Defendant has directly and/or

9  indirectly infringed, induced infringement, and/or contributed to infringement of the '757 Patent;

10      B.    That the Court find and enter a judgment that Defendant's infringement of

11  the '757 Patent has been and continues to be willful;

12      C.    That the Court enter a permanent injunction, pursuant to 35 U.S.C. § 283,

13  enjoining Defendant and its officers, agents, servants, employees, successors, assigns, attorneys,

14  and all others in active concert and/or participation with them from further directly infringing,

15  indirectly infringing, inducing infringement and/or contributing to infringement of the '757 Patent;

16      D.    That the Court find and enter a judgment, pursuant to 35 U.S.C. § 284, first

17  paragraph, awarding SmartData damages, including an accounting of damages, adequate to

18  compensate SmartData for Defendant's past and present infringement of the '757 Patent by

19  payment of an amount not less than a reasonable royalty on Defendant's sales of infringing

20  products, together with pre-judgment and post-judgment interest on the damages awarded, and

21  costs;

22      E.    That the Court award SmartData treble damages based on the willfulness of

23  Defendant's infringement, pursuant to 35 U.S.C. § 284, second paragraph;

24      F.    That the Court find and enter a judgment that this case is exceptional and

25  award to SmartData its reasonable attorney fees, disbursements and costs in accordance with the

26  law, including, but not limited to, 35 U.S.C. § 285; and

27      G.    That the Court award SmartData any other relief that the Court may deem

28  just, equitable, and proper.

COMPLAINT FOR PATENT INFRINGEMENT        4

1    **DEMAND FOR JURY TRIAL**

2    SmartData hereby demands a jury trial on all issues so triable.

3

4    Dated: February 6, 2012                                Respectfully submitted,

5                                                           By: _____

6

7                                                           **LAW OFFICES OF LARISA MIGACHYOV**
                                                            Post Office Box 2061
8                                                           San Francisco, California 94126-2061
                                                            Tel.: 650.218.5480
9                                                           Email: larisa@lvmpatents.com

10                                                          *Attorney for SmartData, S.A.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**



US007158757B2

(12) **United States Patent**
Buttet

(10) **Patent No.:**     **US 7,158,757 B2**
(45) **Date of Patent:**          **Jan. 2, 2007**

(54) **MODULAR COMPUTER**

(75) Inventor:   **Jean-Pierre Buttet**, Martigny (CH)

(73) Assignee:   **Smartdata S.A.**, Martigny (CH)

( * ) Notice:   Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 198 days.

(21) Appl. No.:   **10/477,931**

(22) PCT Filed:   **May 29, 2001**

(86) PCT No.:   **PCT/CH01/00334**

§ 371 (c)(1),
(2), (4) Date:   **Nov. 18, 2003**

(87) PCT Pub. No.:   **WO02/097596**

PCT Pub. Date: **Dec. 5, 2002**

(65)          **Prior Publication Data**

US 2004/0142724 A1     Jul. 22, 2004

(51) **Int. Cl.**
*H04B 5/00*          (2006.01)
(52) **U.S. Cl.** ........................ **455/41.3**; 455/66.1; 725/62
(58) **Field of Classification Search** ............... 455/41.2, 455/41.3, 66.1, 557, 550.1; 725/62, 74, 81
See application file for complete search history.

(56)          **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,229,700 B1 | 5/2001 | Liu et al. | |
| 2002/0002707 A1* | 1/2002 | Ekel et al. | .................... 725/87 |
| 2002/0059642 A1* | 5/2002 | Russ et al. | .................. 725/135 |
| 2003/0050058 A1* | 3/2003 | Walsh et al. | ................ 455/426 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 196 39 700 | 4/1998 |
| EP | 0 710 017 A2 | 5/1996 |
| EP | 1 059 809 A2 | 12/2000 |
| GB | 2 299 878 | 10/1996 |
| WO | WO 00/00880 | 1/2000 |

* cited by examiner

*Primary Examiner*—Nguyen T. Vo
(74) *Attorney, Agent, or Firm* –Nixon & Vanderhye P.C.

(57)          **ABSTRACT**

The invention concerns a computer comprising a central unit, an input device, a communication interface with a remote network and display and/or sound reproduction means. The invention is essentially characterised in that the computer can consist of elements already existing in the user's surroundings (for example, portable telephone, television).

**17 Claims, 2 Drawing Sheets**





**Fig. No. 1**

Case 4:12-cv-00583-YGR   Document 1   Filed 02/06/12   Page 11 of 15



Fig. No. 2

US 7,158,757 B2

**1**

## MODULAR COMPUTER

This application is the U.S. national phase of international application PCT/CH01/00334 filed 29 May 2001 which designated the U.S.

The present invention pertains to the field of computers.

In its most frequent structure, a computer comprises several elements, in particular a central unit (microprocessor, hard disk, RAM memory, etc.), an input device (e.g. a keyboard), display means, sound reproduction means and an interface for communication with a remote network (e.g. Internet).

This plurality of elements renders the cost of a computer relatively high, usage often rather inconvenient and/or transport thereof awkward.

The present invention is aimed in particular at remedying the aforesaid problems.

The purpose thereof is to allow the production of a portable microcomputer that is capable of using existing installations as means of communication with remote users or networks.

It is found that at present mobile telephones, pocket computers (of the electronic organizer type), televisions, computer screens, video projectors are very widespread.

The invention therefore aims to profit from the presence of these elements, it relates to a computer comprising a central unit, an input device (e.g. a keyboard and/or a mouse, a touch screen or any other pointing or input device), an interface for communication with a remote network and display and/or sound reproduction means, the computer is characterized in that it comprises the following three separate elements:

a) a first element comprising said central unit which contains means for storing and executing computer programs and means for storing data,

b) a second element comprising said data input device, said interface for communication (with or without wires) with a remote network and means of wireless transmission (e.g. by radio or by infared) with said first element,

c) a third element comprising said display means and/or said sound reproduction means and means of connection to said first element,

said first element is of reduced size (pocket format) and furthermore comprises means of connection to said third element and means of receiving, respectively sending, signals sent, respectively received, by said second element.

The second element can serve simultaneously as:

communication gateway between the remote network and said first element,

means for the user of said second element, to dispatch commands which are received and interpreted by said first element.

The microcomputer according to the invention can for example use the screen of a television as display device, the acoustic cabinets associated with the television as sound reproduction element, the keypad or the touch screen of a mobile telephone as user interface; the radio communication interface being obtained through this same mobile telephone which also operates as gateway for accessing a remote communication network.

Furthermore, the result obtained with the computer according to the invention can result in a higher-performance assembly than the computers of the state of the art. Specifically, this microcomputer is for example capable of reproducing sound on the high-fidelity acoustic cabinets of

**2**

a television to which it is hooked up, or of offering a giant picture using a video projector.

A few nonlimiting exemplary embodiments of the invention are described hereinbelow by means of the following figures:

FIG. 1 illustrates an embodiment of the computer according to the invention.

FIG. 2 describes an embodiment of the first element.

The device represented in FIG. 1 consists of a first element **2** which comprises a central unit, a mobile telephone **3** and a conventional television set **12**.

A wireless communication interface **1**, for example of Bluetooth 802.11b type or the like, is connected or built into the mobile telephone **3**.

The mobile telephone **3** is capable of effecting a link with a remote telecommunication network **6** (for example Internet) by performing a wireless data transmission with a fixed antenna **5** connected to the remote network **6**, using its standard communication interface, for example GSM, GPRS, UMTS or the like.

The first element **2** can access data situated on the remote network **6** via the interface **1** of the mobile telephone **3**. In this case, the mobile telephone **3** operates as communication gateway between the remote network **6** and the first element **2**.

The first element **2** is of small size, so that it can be connected in a fixed or removable manner to a signal input of the television set **12**. In the example illustrated in FIG. 1, the first element **2** is fixed to a SCART socket **9** of the television **12**. The first element can thus dispatch audio and video signals to this same television **12**.

If necessary, another cable **7**, coming from a video source, for example a video recorder **8**, can be connected to the first element **2**. In this case, the first element **2** provides for the conveying of the signals between the video recorder **8** and the monitor **12**, allowing conventional operation of the system.

A wireless communication interface included in the first element **2** makes it possible to exchange data with the corresponding interface **1** of the mobile telephone **3**.

A computer program contained in the mobile telephone **3** enables the user to use his mobile telephone **3** to input and dispatch the necessary commands to the first element **2**. The mobile telephone **3** contains a menu of commands for dispatch to the first element **2** (the menu can for example be displayed on the display screen of the mobile telephone **3**). In this way, a user can select and execute the desired command using the keypad of the mobile telephone **3**.

A command enables the user of the mobile telephone **3** to transform his telephone into a gateway, thus allowing the first element **2** to connect up to a remote network, for example the Internet network **6** through the fixed infrastructure **5** of the mobile telephone network, through the mobile telephone **3** and through its other wireless communication interface **1**.

In this manner, the first element **2** can be connected for example to the Internet **6**.

The first element **2** is illustrated in greater detail in FIG. 2. It is composed of a small box, advantageously of pocket format, to which is fixed the system for electrical connection to the external television, video projector or computer monitor.

For example, in the case of connection to a television, a female SCART connector **2.1** is fixed to the left part, and a male SCART connector **2.2** to the right part.

The audio and video electrical signals can pass through the first element **2** by traversing the connector **2.1**, and by

US 7,158,757 B2

3

passing without alteration through the electronic device 2.5, to go to the connector 2.2. Thus, as shown by FIG. 1, the first element 2 can be connected to the television by plugging the connector 2.2 into the SCART socket 9 of the television.

Likewise, the optional cable arriving normally at the television 12 (for example, a cable 7 coming from a video recorder 8 or any other signal source), can be connected to the television 12 by way of the connector 2.1 fixed to the first element 2.

The first element 2, can for example be easily transported in a pocket from one place to another, and it can be connected, even for temporary use, directly to the connector of any television having this type of connection. This type of connection being standardized, the first element 2 can be mounted on a large number of standard televisions.

The first element 2 contains a communication interface 2.3 able to establish a wireless data transmission between an external appliance, for example the mobile telephone 3, and the microprocessor-based electronic system 2.4 contained in the first element 2.

The microprocessor-based system 2.4 is capable, by virtue of a computer program that it executes, among other things, of the following actions:

Interpreting the commands coming from the telephone 3; these commands being generated by the user who actuates the mobile telephone 3.

Interpreting the data that he has searched for on a remote network 6.

In this way, for example, commands generated by the user of the mobile telephone 3 will start inside the system 2.4 the execution of a program of the Internet browser type.

This browser can for example fetch data from a remote network (via the mobile telephone 3). These data are interpreted by the Internet browser program and the resulting Internet pages are also transformed by 2.4 into the form of corresponding audio and video signals that are dispatched so as to be displayed thereon and returned to the television 12.

The television 12 can also have built-in acoustic cabinets for sound reproduction.

The optional device 2.5 can be controlled by the system 2.4, to establish bidirectional communication, either between 2.1 and 2.2, or 2.4 and 2.2 (controlled routing).

The first element 2 can comprise one or more switches 2.6 enabling the user to engage, disengage or reset the first element 2. The first element 2 can be powered by an external power supply, or can be powered through the intermediary of the connectors 2.1 and/or 2.2, by virtue of the appliances connected thereto.

The SCART connectors mentioned in this document are so by way of illustration of a possible variant, they may be substituted by any other type of Audio/Video connector either analog or digital so as to connect the first element 2 to the sound and picture reproduction element 4.

In another variant execution, the video part is not processed by the first element 2, only the sound part is processed. The first element 2 can then be connected to the sound reproduction element 4 (television, only the sound part of which is used), or to another sound reproduction system, such as a hi-fi deck, radio which substitutes for the element 4.

In another variant of execution, the audio and video connections are replaced by another wireless communication interface so as to connect the first element 2 to the sound and picture reproduction element 4.

The mobile telephone 3 is mentioned by way of example, it may be substituted by any computer, pocket organizer,

4

portable computer or office computer, and other electronic device capable of effecting the wireless links as described above.

In a variant of use, the two wireless interfaces of the mobile telephone 3 can be substituted by two radio channels on the same wireless interface.

In another variant of use, the two wireless interfaces of the mobile telephone 3 may be substituted by a wireless interface of radio type and an infrared interface.

In another variant of use, the two wireless interfaces of the mobile telephone 3 may be substituted by two infrared interfaces.

In a variant of use, several mobile telephones of types 3 may be used simultaneously by several users. In this case, one or more telephones may operate as a gateway to connect the first element 2 to the remote network, just as one or more telephones may dispatch command signals to the first element 2.

In another variant of execution, the audio and video connections 2.1 and/or 2.2 are replaced by another interface for wireless communication with the device 4.

Hereinbelow are a few nonlimiting examples of operation of the computer according to the invention.

Connection to the Internet

The user connects a first element 2 to a television, a computer screen, a video projector, spectacles allowing video image display or any other device making it possible to display video images and optionally to reproduce sound.

The user actuates a program contained in his mobile telephone 3. In a variant of use, this program is dispatched and made available by the first element 2 to the telephone 3, for example in the form of an applet.

This program, when it is executed, opens a communication channel between the remote network 6 and the microprocessor-based system 2.4 contained in the first element 2.

The signals then pass through the following path defined by the following point:

Remote network 6, fixed infrastructure 5, mobile telephone 3 (through its GSM or GPRS or UMTS wireless interface or the like), then through another wireless interface 1 of the telephone 3, to the wireless interface 2.3 of the first element 2 which dispatches the signals to the microprocessor-based device 2.4.

Through this means, the user can for example connect the system from the microprocessor 2.4 to the Internet 6.

In a noteworthy manner, and by virtue of his telephone 3, the user can simultaneously with the downloading of the data from the remote network to the device 2.4, dispatch commands to this same system 2.4. The commands are for example entered on the keyboard, the touch screen, the mouse or the voice recognition system of the appliance 3 and conveyed to 2.4 along the same path as the data coming from the remote network.

For example, a command can be dispatched to order 2.4 to consult a website corresponding to an address specified by the user. The system 2.4 establishes the connection, downloads the data therein, and interprets them so as to generate the video and/or sound signals representing the web page. These signals may be displayed on the television and the sound reproduced on its acoustic cabinets.

In a noteworthy manner, the user who already has a mobile telephone and a conventional television can consult the Internet, by virtue of the implementation of the first pocket element 2.

US 7,158,757 B2

5

Game Platform

The user connects a first element 2 to a television, a computer screen, a video projector or any other device making it possible to display video images and optionally to reproduce sound.

The user actuates a program contained in his mobile telephone 3. In a variant of use, this program is dispatched and made available by the first element 2 to the telephone 3, for example in the form of an applet.

This program, when it is executed, opens a communication channel between the remote network 6 and the microprocessor-based system 2.4 contained in the first element 2.

The signals then pass through the following path defined by the following point:

Remote network 6, fixed infrastructure 5, mobile telephone 3 (through its GSM or GPRS or UMTS wireless interface or the like), then through another wireless interface 1 of the telephone 3, to the wireless interface 2.3 of the device which dispatches the signals to the microprocessor-based device 2.4.

Through this means, the user can for example connect the microprocessor-based system 2.4 to the Internet 6. The user can simultaneously dispatch commands to this same system 2.4, the commands are for example entered on the keyboard, the touch screen or the mouse of the appliance 3 and conveyed to 2.4 along the same path as the data coming from the remote network.

A command can be dispatched by the user, by virtue of his telephone 3 to order 2.4 to download a game from a website located on the Internet.

The system 2.4 located in the first element 2, establishes the connection, downloads the desired game and initiates execution thereof.

The pictures and optionally the associated sound are generated by the system 2.4 and displayed on the display device 4 to which it is connected. If sound signals are present, they are reproduced by the acoustic cabinets associated with the display 4 used, for example the acoustic cabinets of the television.

Simultaneously, the central unit 2.4 dispatches a small program (for example an applet) to the mobile telephone of each player present.

This program, when it is executed, enables each user to use his telephone as a joystick. Pressing certain keys of the telephone will trigger the dispatching of information through the wireless interface 1 of each telephone 3, to the unit 2.4. This unit interprets the respective signals as the game control commands on behalf of each player.

In this way, a player can download a game by virtue of his mobile telephone 3, have it executed by the unit 2.4 and share with several play the pleasure of playing.

The invention claimed is:

1. A computer comprising a central unit, an input device, an interface for communication with a remote network and display and/or sound reproduction means, characterized in that it comprises the following three separate elements:

  a) a portable pocket-sized first element comprising said central unit which contains means for storing and executing computer programs and means for storing data,

  b) a second physically separate element comprising said data input device, said interface for communication with a remote network and means of wireless transmission with said first element,

  c) a third physically separate element comprising said display means and/or said sound reproduction means and means of connection to said first element, and

6

  wherein said first element furthermore comprises means of connection to said third element and means of receiving, respectively sending, signals sent, respectively received, by said second element,

  wherein the first element can communicate with the remote network via the second element, and

  wherein the computer can use a screen of a television as the display means, an acoustic cabinet or cabinets associated with the television as the sound reproduction means, a key pad or a touch screen of a mobile telephone as the interface, and a radio communication interface obtained through the mobile telephone that also operates as a gateway for accessing the remote network.

2. The computer as claimed in claim 1, characterized in that the second element is a mobile telephone.

3. The computer as claimed in claim 1, characterized in that the second element is a pocket computer or pocket electronic diary.

4. The computer as claimed in claim 1, characterized in that the second element is a portable computer, office computer or server.

5. The computer as claimed in claim 1, characterized in that the third element is a conventional television screen.

6. The computer as claimed in claim 5, characterized in that the means of connection of the first element (2) consist of a SCART plug intended to connect up to the corresponding SCART socket of the third element.

7. The computer as claimed in claim 6, characterized in that the first element takes the form of an insert which furthermore contains a SCART socket.

8. The computer as claimed in claim 5, characterized in that the means of connection of the first element consist of connectors for audio and video signals and/or data, in analog or digital format, intended to connect up to the corresponding connectors of the third element.

9. The computer as claimed in claim 1, characterized in that the third element is a conventional computer screen or a video projector.

10. The computer as claimed in claim 9, characterized in that the means of connection of the first element consist of a VGA or SVGA socket, or other female video connector intended to connect up to the corresponding plug of the computer screen or of the video projector.

11. The computer as claimed in claim 10, characterized in that the first element takes the form of an insert which furthermore contains a VGA or SVGA plug, or other video or male connector.

12. The computer as claimed in claim 9, characterized in that the means of connection of the first element consist of connectors for audio video signals and/or data, analog or digital, intended to connect up to the corresponding connectors of the computer screen or of the video projector.

13. The computer as claimed in claim 1, wherein the third element is a sound reproduction means comprising a hi-fi deck, music amplifier with associated acoustic cabinets, car radio, radio, walkman, music recorder or any other sound reproduction, transmission and recording system, and a means of connection to said first element.

14. The computer as claimed in claim 13, characterized in that the means of connection of the first element consist of connectors for audio signals and/or data, analog or digital, intended to connect up to the corresponding connectors of the sound reproduction, transmission or recording system.

15. A method of communication used with the computer of claim 1, characterized in that it consists in simultaneously using said second element as:

US 7,158,757 B2

7

a communication gateway between the remote network and said first element,

a means for the user of said second element, to dispatch commands which are received and interpreted by said first element.

**16**. A portable, pocket-sized microcomputer device comprising a central unit that contains means for storing and executing computer programs and means for storing data, and which does not include a data input device and which does not include a display means or a sound reproduction means,

wherein the central unit is capable of connecting with a physically separate element comprising a data input device that has an interface for communication with a remote network and a means of wireless transmission with the central unit,

wherein the central unit is capable of connecting with another physically separate element comprising a display means and/or a sound reproduction means and that has a means of connection to the central unit,

wherein the central unit comprises a means of receiving, respectively sending, signals sent, respectively received, by said physically separate element and a means of connection to said another physically separate element.

wherein the central unit can communicate with the remote network via the physically separate element, and

wherein the device can use a screen of a television as the display means, an acoustic cabinet or cabinets associated with the television as the sound reproduction means, a key pad or a touch screen of a mobile telephone as the interface, and a radio communication interface obtained through the mobile telephone that also operates as a gateway for accessing the remote network.

8

**17**. A computer comprising a central unit, an input device, an interface for communication with a remote network and display and/or sound reproduction means, characterized in that it comprises the following three separate elements:

a) a portable pocket-sized first element comprising said central unit which contains means for storing and executing computer programs and means for storing data,

b) a second element comprising said data input device, said interface for communication with a remote network and means of wireless transmission with said first element,

c) a third element comprising said display means and/or said sound reproduction means and means of connection to said first element.

wherein said first element furthermore comprises means of connection to said third element and means of receiving, respectively sending, signals sent, respectively received, by said second element,

wherein the second element is a pocket computer, pocket electronic diary, portable computer, office computer or serve,

wherein the first element can communicate with the remote network via the second element, and

wherein the computer can use a screen of a television as the display means, an acoustic cabinet or cabinets associated with the television as the sound reproduction means, a key pad or a touch screen of a mobile telephone as the interface, and a radio communication interface obtained through the mobile telephone that also operates as a gateway for accessing the remote network.

* * * * *